Mary, could you call the witness, please? Case number 13-2979, People v. Jeffrey Hunt. Counsel's approach, please. And then identify yourselves for the record. Good morning. I'm Sarah Curry from the State Appellate Defender, and I represent Jeffrey Hunt. Good morning. I'm Assistant State's Attorney Ashley Kuz on behalf of the people of the State of Illinois. Okay. Fifteen minutes apiece. You want a time for rebuttal? All right. How much time? Three minutes. Three minutes? Okay. All right. Thank you. Ready to proceed? Good morning, Your Honors. This is a case about a trial court's abuse of discretion. Judge Sattery Boyle abused her discretion when she denied Jeffrey Hunt his right to represent himself. Well, let me ask you a question. December 12th. Yes. Case is up for trial. Correct. Jury's ready to come up to the courtroom. Yes. And then he asks to proceed pro se. Is that an obstructionist? A request to proceed pro se filed even on the day of trial. If not accompanied by a request for additional time is considered timely. And the language of that was obstructionist. This case has already been asked a number of times. There's been continuances. Those continuances were not based on anything that he did. On the first two dates the case was set for trial, the State filed a motion in limine seeking to introduce evidence of other crimes, evidence and prior convictions. And Judge Boyle granted. That's what the attorneys would do. But what about the defendant? He didn't do anything. He did make a request. Well, my initial request is to Judge Patron. Is that correct? His initial request to represent himself. So when he requested again the second time to Judge Boyle, is she impugned to have the knowledge that he previously requested? Well, he didn't request a second time. Judge Patron continued the case to allow Hunt time to think about his decision and for Judge Patron. Well, so she made a decision on the 12th. Correct. But he's making a request on the 12th. Correct. He makes a request again on the 17th. Correct? Correct. But he would have accepted a decision by Judge Patron on the 12th. How do we know that? Excuse me? How do we know that? He didn't ask for additional time. He didn't ask can you continue this to give me time to think about it so that Judge Boyle can rule. He didn't do anything. Judge Patron on her own said, well, I'm going to continue this to Monday so Judge Patron can make the final ruling. He didn't request it again. It was the same request that was proceeding to the next court date. There were no more requests after that. He didn't persist in his claim that he wanted to represent himself. So did he abandon it? Did he waive it? No, and the cases have clearly held that once a defendant makes a request and it is denied, he doesn't have to continually be making those requests. In fact, though, on July 3rd, I believe 2012, about six months later, he filed a pro se motion to dismiss. It wasn't ever ruled on by the court because it was withdrawn. It wasn't withdrawn. It was, he was represented by counsel. That was withdrawn. Well, he alleged that the court had erred in denying his motion to represent himself. So he hadn't abandoned it. He was, but a defendant is not required to continually be making these demands once it's ruled, once it's denied. That case, was that one, two, six times, seven times, too far close to jury? Is there any way that he abandons it? No. He, Judge Goyle told him. Once you say I want to proceed pro se, it doesn't matter how many times the case is called. If you're not doing it as a delay tactic, if you're not asking for more time, which he did not, and Judge Patron told him, he said, don't I have the right to represent himself? Or Judge Goyle, I'm sorry. He said, don't I have the right to represent myself? And she said, no, you do not. Let's talk about these attempts at maybe possible delay. All right? Okay. So when the case first got assigned to the courtroom, they asked for a task evaluation, and the judge clearly said, he's not eligible for a task evaluation. But they persisted on it to try to get a continuance. Then we, later on, asked for an attorney to represent him, private attorney. But he doesn't have a private attorney. So then the matters continued again. And then we have the situation with, you know, the case being set, and then Judge Patron being advised that he wants to proceed pro se. Right? Again, another continuance. So can we view that as he is persistently trying to delay this matter? No. He asked for a task evaluation. He was denied. That didn't continue the case. That didn't prolong the case. Nothing relevant to that made the case last any longer. He asked for private counsel, and he said that his mother had been in touch with the private counsel, but he would need more time. It was denied. There was no delay. It was denied. The case continued. The case was set for trial. The state filed the motion in limine, and the court allowed time for the defense to respond since it was a very significant motion in limine. And the case was continued twice based on that to allow defense to respond to that motion. There was never a delay that was attributable to Jeffrey Hunt himself. He then asked to represent himself. But the court didn't grant his request. Excuse me? Because the court did not grant his request. True. But at the same time, this was only the ñ when he asked for the private counsel, it was only the third or fourth day that the case was up. Discovery had just been completed. This wasn't like two years that this case had been dragging on, and all of a sudden he's saying, I want a private attorney or I want to represent myself. The case had only been before the court five, six times. And when he made the request to Judge Patron, which is the critical inquiry, he did not ask for more time. In fact, he acknowledged her admonishment that he would not be given more time, and he persisted in his demand to represent himself. When the case came back before Judge Boyle, she out of hand rejected his request. She said he didn't have the right to represent himself. She found he was playing games. And there was just none of that leading up to this. And the most critical inquiry is that he did not ask for more time. He was ready to go to trial that day representing himself. And the only basis that a trial court can deny a request to represent yourself is if you can't knowingly and intelligently waive your right to counsel, which she didn't even make that inquiry, but Judge Patron had and found that he was able to knowingly and intelligently waive his right. If it's so far along in the process that it would disrupt the entire proceedings, but those cases specifically hold that if you request before the trial has started and you're not requesting more time, the court cannot deny your request. And that's exactly what happened here. He was not asking for more time. It was the day of trial, but he was ready to go. There's no indication in the record that he was not ready to go. And the language about the obstructionist misconduct series and obstructionist misconduct, that relates more to somebody who is currently representing themself and is obstructing the proceedings in that regard. All right. Let's move to the BCX. Defense counsel requested. Jeffrey Hyatt informed the court that he suffered from a mental illness, specifically bipolar disorder. And following that, defense counsel asked for a BCX. The court said that because he was aware of the court's broad discretion with regards to a task evaluation and they had been to the law library, that that was a sufficient basis for her to deny a BCX. Well, I don't think that somebody had been capable of discussing task and saying that they went to the law library necessarily means that they're not mentally ill. Moreover, discussion about task leans more towards that he didn't have the capability of understanding the proceedings. She told him over and over again that he was not eligible for task and he couldn't comprehend that. That actually. Well, she kind of disagreed with that. She thought that he was very aware of the court's discretion and that was the basis for her denying his request for a task evaluation. She failed to take into consideration defense counsel's request that and he was the person who was working with Mr. Hunt and obviously needed to work together with Mr. Hunt to represent him. And he asked for the BCX. Obviously, he thought it was something that should happen. A request for a BCX by a defense counsel doesn't stop the proceedings. The proceedings continue. It's just to give the court more information to determine whether there is an issue of fitness. She was talking, Judge Boyle was talking about I have no bona fide doubt, I have no bona fide doubt. But defense counsel was saying let's make sure. Can we just get this fitness evaluation so that we can make sure there's no bona fide doubt. She had an opportunity to observe this man every month. And she had, they obviously had a clip of, whatever that was, going back and forth. And you don't think a trial judge can determine whether somebody is mentally ill based on the way they interact in court? Or whether it's necessary to get a BCX? I don't think that a trial judge can determine whether somebody is mentally ill based on that. No. Or whether he's functioning. Well, this was the fourth court date. The first one was the arraignment. Mr. Hunt said nothing. The second one was a continuance. Mr. Hunt said nothing. The third one was a continuance. Mr. Hunt said nothing. So it's just Mr. Hunt with his discussing task. She's becoming frustrated by him, yes. And then defense counsel goes and then asks for the BCX. It's not Mr. Hunt that's saying I want a BCX. It's not Mr. Hunt, you know, trying to delay or play games or anything like that. Mr. Hunt tells the court that he has this mental illness. And defense counsel is the one that asks for the BCX. Defense counsel, we cannot discount that he made that request based on information that he had in working with Mr. Hunt, who obviously he was working more closely with Mr. Hunt than whatever the court was saying. Okay. Mr. Hunt. The court continued its abusive discretion of sentencing when she refused to consider Hunt's mental illness as a factor in mitigation. The United States and Illinois constitutions guarantee a criminal defendant fair sentencing hearing, which includes taking into consideration all the factors in aggravation and mitigation. And this court has held that mental health issues warrant consideration as a factor in mitigation. Here Hunt refused to consider that Hunt even had any mental illness, let alone consider it as a factor in mitigation. Her refusal to consider this mental illness was based on an erroneous disbelief that his mental illness had not been brought before the court before sentencing, her mistaken recollection of the record as a whole, and a personal bias against Hunt. It seemed as if she was sentencing somebody totally different. Let me ask you a question. If we interlock the request to represent yourself, all right, with the BCX request, did the defense counsel on the record indicate to the trial court that there may be some rational reason that he should be BCX since it might appear that he might not be able to represent himself? Well, defense counsel did when Jeffrey Hunt requested that he be able to represent himself and Judge Patron continued the case. Defense counsel did state that if he were not allowed to represent himself, meaning defense counsel would still be representing him, he renewed his request for a BCX, further affirming that he wanted to. Did they ever indicate to the trial court that there was an inability for Mr. Hunt to be able to rationally make decisions and not be able to represent himself and that's why he needed a BCX? Not more specifically than the request, but I think you can infer from the request that defense counsel made twice that defense counsel felt that there was a need. Judge Brewer never allowed him to continue on. We can't infer. We only have to read what's in the record. Well, defense counsel requested a BCX twice. Let me ask you a couple of questions. First, did this defendant ever indicate why he wanted to discharge his lawyer? Not specifically, no. Did he ever complain about anything that the lawyer did? Further along in the proceedings, he wanted to demand trial, which is another indication that he wasn't delaying, but all throughout the rest of the proceedings following these, he wanted to demand trial and he was, I believe, irritated by his defense counsel for not making the proceedings move along more quickly. Did this defendant have a defense? Well, he presented a defense that the state couldn't prove his guilt beyond reasonable doubt. And that's the only defense that he had? That was his defense. Can a defendant academically abandon his request? Not according to the case law. Pardon? Not according to the case law. Once he makes an unequivocal request that he represent himself and that request is denied, he does not have to continually renew that request. Yeah, but you used the word unequivocal. The unequivocal could change as time goes on. Maybe he's happy with his lawyer after a while. Well, six months later, he filed a motion to dismiss saying that the court had erred in denying his request, so I would think that his unequivocalness has remained throughout. At sentencing, Judge Boyle said that Hunt's mental illness had never been brought to her attention, but we know that Hunt had informed the court that he had a mental illness, bipolar disorder. Defense counsel had requested the BCX, which she had denied, and Hunt's PSI, which Judge Boyle admitted she was in possession of, specifically said that he had been diagnosed as bipolar in 2009 and had received treatment during his incarceration in 2009 and 2011, and the PSI stated that Hunt had been prescribed Depakote and Paxil throughout his incarceration in this case. So there was sufficient evidence to put Judge Boyle, to make her aware that he did suffer from this mental illness. She also, when defense counsel interrupted to say, to remind her that there had been a request for a BCX, Judge Boyle said that I have never, ever denied the request for a BCX, but we know that that's not true because she did specifically deny the request on November 1, 2012. Judge Boyle repeatedly talked about how happy Hunt seemed with his attorneys and somehow discounted any suggestion that he was mentally ill. While this is irrelevant, it's also not true because we know that he requested a private attorney and he requested to represent himself. Judge Boyle also relied on the fact that Hunt had requested a 402 conference and he knew and understood what a 402 conference was and he participated in the negotiations. On April 11, 2013 and again on June 10, 2013. I'm familiar with the facts, so if you could just sum up. This Judge Boyle sentencing hearing devolved into a barrage of insults laid against Mr. Hunt, disparaging his integrity and showing her clear bias against him. She said you have done nothing in society but take and wreak havoc, nothing. You provide nothing to humanity. I doubt you provide anything on the home front in terms of a fresh loving environment or because you're all about you. I'm somehow supposed to be grateful that you're not violent and I'm not. Judge Boyle did not receive a fair sentencing hearing. Why don't you save some time for rebuttal? Okay. Well, Judge Boyle refused to consider his mental health in sentencing and she was biased against him and he did not receive a fair sentencing hearing. Thank you. Good morning. Good morning. So the U.S. Supreme Court in Feretta says that we're entitled to represent ourselves regardless. The U.S. Supreme Court in Feretta does discuss that, but it also states that the right to self-representation is not a license to abuse the dignity of the courtroom. And that's what we have right here. This defendant on the day of his jury trial, immediately before jury session was about to begin, announced his request to proceed pro se. His request was not only untimely, it was insincere and part of a pattern of conduct aimed at manipulating and controlling these proceedings. How was it insincere? There's a whole variety of factors to show that his request was not, in fact, genuine, and I do believe that timing is one of those factors. Here, as we've discussed, he announced his request for the first time on the third day that this case was set for jury trial. At that point, as Justice Brook alluded to, this case had been before the court seven times over an almost six-month period of time and discovery had been complete for five of those court hearings. The matter had been set for jury trial for over a month. This was not timely. This case seems to be on a rapid docket, though, doesn't it? I mean, it comes in and within two months they're all ready to go to a jury trial? Absolutely. This is a pretty black-and-white case. There aren't any detective steps. There aren't any fingerprints. There aren't anything that would require a lengthy period of time to gather discovery. Yeah, it took a year and a half. And a lot of it was continuous as requested by counsels on both sides. That is true. So even though she's trying to move this case along, aren't the lawyers maybe being the obstructionists here? Because they're continually asking for continuances. I understand some of it is due to witnesses not being available, but presenting a motion on the day that the case is set for trial for other evidence to be introduced where you know that the other side is going to need an opportunity to review that motion and want an opportunity to respond to that motion and then maybe have a hearing on it. So isn't that sort of an obstructionist in regards to this case? No, not at all. Well, Judge, first of all, the motion in limine and the motion for other crime that is The other motion in limine was a motion for introduction of other evidence. Yes, correct. Other crimes, I'm sorry. There were both. And those were both addressed. And I do agree that that is a significant motion that needed time for counsel to respond to. But a defendant in his brief has discussed in great length the facts or the things that continued this case. But all of that is steering us in the wrong direction because it's not focusing on the real question here. The real question here was what was the purpose of defendant's request to proceed pro se? Did he truly want to represent himself? Or was he intending to delay the proceedings? But he wasn't asking for a continuance. Even on the 17th, he makes his request, but he doesn't request a continuance. So how can you say his purpose is delayed? He has a pattern of conduct here. So when the case is first set for trial, he's before Judge Stevenson, a substitute judge. And that's the day that he requests a continuance, expressly requests a continuance, for a private attorney. And when Judge Stevenson presses him to see if that request is legitimate and asks him questions about this private counsel, she finds out that he has no counsel ready for trial that day. In fact, he hasn't even spoken to a private attorney. And when she asks him for a name, he can't even come up with a name of a private counsel. Did he indicate that his mother was the one that had the attorney? Didn't he indicate that his mother was the one that had the attorney? He indicated that his mother had spoken to someone. And when Judge Stevenson said, oh, can you please tell me that attorney's name, he had no idea who that attorney was and couldn't even provide a name to the judge. Then the matter is held over to the following day when it's again before Judge Broyle. At that time, defendant makes no request to proceed pro se, no indication that he wants to represent himself or that he's dissatisfied with counsel. The case is then brought before the court again, Judge Broyle, two days thereafter to advance and reset the trial. Once again, no indication that the defendant wants to represent himself. So then on the third day that this case is set for trial, now it's before Judge Patrone. The defendant requests to proceed pro se. We can see a pattern of defendant trying to delay these proceedings when he's before a substitute judge who he believes will entertain his request. But following up on Judge Burke's question, he never once asked for a continuance. Throughout all these proceedings, he never asked for a continuance. He did ask for a continuance for private counsel, but I agree that he did not expressly ask for a continuance on the day that he requested to proceed pro se. But the fact of the matter is, defendant didn't need to request a continuance on that day. Everybody in that courtroom was well aware that the defendant wasn't ready to proceed to trial. And in fact, Judge Patrone indicated that in her half sheets, in her notes. What we know is the defendant needed police reports. He needed discovery documents. He needed time to prepare for this trial. And if the court had let the defendant proceed pro se on the day that he made his request, then we'd be here today on defendant's argument that he was denied due process for failure to be given an opportunity to have the adequate discovery that he needed to prepare for trial. Did Judge Patrone adequately admonish the defendant with regards to his request to proceed pro se? Yes, Your Honor. What about when he goes in front of Judge Boyle and he says, I want to proceed pro se, and she says, don't I have that right? And she says, no. He absolutely has a right to proceed pro se. Is her telling him no cutting off his ability to represent himself? No, it's not. And the judge, however unartfully she did state it, is correct in that defendant's right to I didn't know there was an exception in it. I'm at a fault. Okay. Defendant's right to represent himself in a criminal trial is not absolute. It is subject to limitations. It must be timely. And it must not be made for the purpose of delay. And that's the situation that we have here. Well, she kind of goes on and on about the gamesmanship. But I just don't see the extensive record in this establishing gamesmanship. This case is still really a young case. When it pops up, and as counsel pointed out, there's very few interactions she's had with the defendant, where are we getting all this gamesmanship? I'll run you through it really quick. On the very first day that this case was before the judge, the defendant requested to be mandated to the That's not gamesmanship. They all ask for it. And it shows that the defendant, who, again, he has eight prior burglary-related convictions. He's not new to this game. He knows what he's doing. He knows what's going on. So from the very first day of trial, he's trying to manipulate the proceedings. He's going to be class X. He is. Exactly. So he wants to make sure that everything that needs to be said at the trial is going to be said at the trial. That's why he wants to proceed pro se. So there's an entitlement to their right. I'm not sure I understand your question. So he could go away for quite some time, right? Correct. So he wants to make sure that whoever represents him is going to do a good job. And in his mind, he wants to proceed pro se. So isn't he entitled to that? No, Judge. I believe what the record shows here is that the defendant realized that this is a black-and-white case. There are two civilian eyewitnesses that are testifying against him, and he's found with a contraband in his hand. Defendant's only chance. It's all circumstantial. I'm sorry? It's all circumstantial. But he knows this is not a good case against him. And as Justice Gordon alluded to, he really didn't have a defense in this case. So his best option in this case was to exhaust the civilian witnesses. And that's why he was requesting these continuances. He knew that if he could get these civilian witnesses not to testify against him, then he would have a chance. And that's exactly what started happening here. He requested these continuances. Counsel asked us to infer some things from the record. And I indicated that we don't infer, we just read what's in the record. But let's just follow that along for a moment. Based on what Judge Burkett asked about a trial court's language, can we infer from here that this gentleman may have been intimidated or in any way deterred from making any more requests to proceed pro se because of the language that was going on between the trial court and the defendant? Absolutely not. And I believe that defense counsel misstated the law with respect to defendant's request to renew or our evaluation of his renewal or lack thereof of his request to proceed pro se. What the law tells us is that defendant is not required to make repeated requests to proceed pro se or such efforts would be fruitless. So we have to look at the facts in this case. When defendant made his request to proceed pro se, the matter was set for trial. However, several months later, the matter was taken off of the trial call at the defendant's request so that he could engage in negotiations with the state's attorney's office. Then, at that point, there was no more trial pending. And the judge here made a specific finding. I find that you're making this request for the purpose of delaying trial. At that point, the case is off the trial call. The purpose of delay is off the table. His efforts to renew his request would not be fruitless in that situation like it would be in a lot of other cases, say, where a judge makes a finding that the defendant's waiver can't be knowing and intelligent. Was it the motion to withdraw, though, his renewal of the request? You mentioned the proceeding in that motion. In his pro se motion? You know, I think that's interesting because his pro se motion, while it does discuss his request to proceed pro se, never anywhere in there indicates a true intention or desire to represent himself. What he's asking is that, saying in some fashion, is that the denial of his request warrants complete dismissal of his case. So, once again, this is fitting into the pattern of manipulative conduct. He's trying to find an out. He's trying to find a way to get rid of this case, and he wasn't able to get rid of this case by getting rid of these witnesses. And now he's trying to just ultimately dismiss the case. I think that if the defendant's request really was sincere, if he really wanted to represent himself, then that would have been expressed at least in some fashion in his pro se motion, and it wasn't. Okay. Let's move on to the BCX. Sure. We have a lot of lost students here today, so why don't we say what a BCX is? It's a behavioral clinical examination that defendants request. Okay. That's correct. And I would like to start out by noting that defendant failed to preserve his claim regarding his request for a BCX. He forfeited this claim by failing to object at trial or to raise it in his post-trial motion. And defendant in his reply brief argues that the claim was not subject to forfeiture because it could be raised later in a post-conviction petition. But that's not true because defendant hasn't raised a constitutional question here. He raises a statutory one. And I'm not in any way suggesting that the trial of an unfit person is not a constitutional issue. It absolutely is. But the right to a fitness hearing or to a fitness examination is statutory. And what about the trial court's basis? I mean, she indicates that he understands the trial court's discretion. He went to the law library. I mean, is that a sufficient enough basis to deny someone a BCX? Yes, because the statute at issue here that gives a defendant, that allows for the fitness examination, it states that the trial court may, in its discretion, order an evaluation to determine if a bona fide doubt of defendant's fitness has been raised. And the trial court expressly stated here that she found no, had no bona fide doubt or good faith reason to believe that the defendant was unfit to stay in trial. That's made very clear. But what's it based on? That's the question here. She bases it on the fact that he knew how to get to the law library. Or that he understood the concept of a trial court's discretion. She does note that. Let me finish. So is that a sufficient enough basis for her to deny him being examined? That wasn't all that's in the record here. No, but that was what she did say on the record. She says the fact that you went to the law library, you understood the trial court's discretion with regards to a task evaluation, and she based it on that. And she reasoned that defendant's behavior, his understanding of the law, negated any concern that she might have regarding his mental health issues. And she later reiterated at sentencing that there was no bona fide doubt of defendant's fitness that was ever raised, and she described him as completely lucid, appropriate, responsive, clear, and unequivocal. And the record here supports the trial court's factual findings. Defendant, who, again, had eight prior burglary-related convictions, was always aware of the posture of this case, and even tried to manipulate the court proceedings by requesting continuances on the days that this was set for jury trial. Defendant claims that he had a hard-time understanding task. That's simply not true. The record shows that he was aware that he wasn't going to get the relief that he was requesting, and that he quickly and cleverly interjected a fitness argument into the matter, once again, to manipulate the proceedings. So what is the appropriate standard here, if there is a standard, for a trial court to evaluate whether or not a defendant should be examined or not? Well, the trial court has to begin by presuming that the defendant is fit to stand trial unless there's evidence that the defendant is unable to understand the nature and the purpose of the proceedings or assist in his defense. This is a really low bar. The court can consider a variety of factors like the defendant's demeanor, his behavior, any relevant medical opinions. But the Illinois Supreme Court has stated that evidence of mental illness, standing alone, does not raise a bona fide doubt of the defendant's fitness to stand trial. So the fact that this case doesn't involve guns, no one was killed, the gentleman knows how to get to the law library, those are factors that we should consider, right? I think we should consider the fact that a defendant made a very cogent legal argument and was able to work his way through the law library. I also think something that's very telling in this case and that you discussed with defense counsel is the fact that the public defender clearly stated that the only reason she was requesting this evaluation was based on defendant's in-court representations of his mental illness. Now, the public defender never stated that she feared defendant didn't understand the proceedings or that she was concerned that he couldn't understand what was going on in court or that she was having some sort of trouble working with the defendant to prepare his defense. She said none of that. All she said in court was that she was requesting this examination just to be sure. That does not show or give us any sort of the information that we need to believe that this VCX request was legitimate. The defendant here that we know from the PSI, he never was in special education. He attended high school. He went to Harold Washington College. He has 34 college credit hours. And he even described his past employment as telemarketing and business consulting. This defendant was fit to stand trial. And because the trial court had no bona fide doubt of the defendant's fitness to stand trial, it was not mandated to order the discretionary fitness exam. The defendant's argument that the trial court should have asked for this exam, it ignores the plain language of the statute and all of the overwhelming evidence of the defendant's fitness. Could you say that, please? Sure. Would you like me to address excessive sentencing, Your Honor? Sure. Briefly. Very briefly. A defendant in this case had a fair hearing. The mitigation evidence was entered and it was admitted orally through his pre-sentence investigation report. The trial court expressly considered this evidence. She admonished the defendant's criminal conduct. She noted the significant weight of the aggravating evidence. And still, in light of all of this, only sentenced the defendant to 11 years. That's five years more than the minimum, 19 years less than the max. So for these reasons and those stated in the people's brief, we ask that you affirm the defendant's convictions. Thank you. I just would like to make one comment. I think you hit the nail on the head that this guy was really an experienced litigator. And he was a game player. And he was much smarter than the judges and much smarter than the lawyers. But unfortunately, our Illinois Supreme Court finds that when somebody makes a request and it's denied to be his own lawyer, that he has that right. But I think you hit the nail right on the head. And it just isn't, I don't think, enough in the record to carve out an exception for game players. But you're right, exactly. And I appreciate your argument. Thank you, Justice. Tell me, was he a game player? I don't think he was a game player. He was facing class-like sentencing. He was dissatisfied as his attorney. He attempted to hire a private attorney. He wasn't allowed to. He accepted that. He decided, you know what, I'm going to do it myself. And he was not allowed to. And that violated his right of self-representation. And the law is clear that a request is timely as long as it's made even on the day of trial, if you're not asking for more time. There's nothing, and the state pointed to nothing, that he was asking for more time. But Judge Boyle thought he was a game player because she said, aren't you playing games? Judge Boyle was biased against him for some reason that I am not aware of from the beginning. This is the fourth time that he was before her. He had done nothing except try to advocate for himself. And she rejected him at every state, every spot, the BCX, representing himself, and at sentencing. She rejected everything that he wanted. And in that respect, she abused her discretion throughout this entire trial. And we request the relief that we asked for in the briefs. Thank you. Thank you. Okay, we want to thank the officers for a well-armed manner. The court is going to take this under advisement. At this point, we're going to take a short recess to reconfigure the panel. Thank you very much.